

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALK/RCC  
F. #2020R00471

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 2, 2025

By ECF

The Honorable Rachel P. Kovner  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. Toney Jones  
            Criminal Docket 23-378 (RPK)

Dear Judge Kovner:

      The government respectfully submits this letter in response to defendant Toney Jones's sentencing submission, ECF No. 35, and in advance of his sentencing, which is scheduled for April 9, 2025, at 2:00 p.m. On August 12, 2024, the defendant pleaded guilty, pursuant to a plea agreement, to Count 5 of the Indictment charging a violation of the Endangered Species Act (the "ESA"). For the reasons below and in accordance with the plea agreement, the government recommends the Court impose a sentence of 12 months' probation and a $10 special assessment.

     I.    <u>Background</u>

      Jones's co-defendant, John Waldrop, amassed a collection of thousands of taxidermy bird mounts and preserved eggs. Between 2016 and 2020, Waldrop imported the majority of his collection in violation of U.S. laws and regulations. The ESA required importers to accurately declare wildlife and present the items for inspection. The ESA also had permit requirements for wildlife listed under the Migratory Bird Treaty Act and Convention on International Trade in Endangered Species of Wild Flora and Fauna. *See* Indictment 3-9. The ESA requirements allow scientists and authorities to have accurate data for the wildlife trade, to ensure that declared species are what they claim to be, to have the required permits for protected species, and to screen for invasive species and pests.

      Waldrop initially smuggled the wildlife into the United States using his own name and address. But by 2016, U.S. authorities regularly intercepted his imports. Waldrop accordingly recruited Jones to aid and abet his scheme to illegally obtain birds and eggs. Waldrop used e-mail and bank accounts in Jones's name to continue buying and importing wildlife and had them shipped to Jones's Alabama residence. Jones would then deliver the packages to Waldrop.

Jones also took an active role in the illegal conduct. For example, at trial the government would have proven through bank records and related testimony that Jones deposited approximately $525,000 in cash to his bank account from June 2016 to November 2019. That bank account was then linked to PayPal to pay for many of the illegal bird imports, with $523,000 of corresponding withdrawals during the same period. Waldrop also paid Jones thousands of dollars by checks with notations referencing birds or eBay, a site Waldrop used to purchase many of the mounts.

Also, in March 2019 inspectors at John F. Kennedy ("JFK") International Airport intercepted a package containing two bird mounts heading to Jones's address. Jones signed the abandonment form but still continued to work with Waldrop to illegally import wildlife.

Jones ultimately pleaded guilty to importing a Levant sparrowhawk, which is protected under the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). This package was intercepted at JFK Airport from Hungary on or about May 15, 2020. Neither Jones nor Waldrop declared the shipment or had the required CITES permit, as required by the ESA. Email records corroborated that an account in Jones's name was used to negotiate the purchase two weeks earlier for approximately $710. The Levant sparrowhawk is pictured below.



II.  Discussion

Pursuant to U.S.S.G. § 1B1.9, the guidelines do not apply to a Class B misdemeanor conviction. An analysis of the Section 3553(a) factors supports a probationary sentence. Looking at the nature of the violation, it is clear that the scheme to illegally import birds and eggs was to

2

benefit Waldrop and his collection. Waldrop paid Jones large sums of money, but it's unclear if that was only to cover the purchase price of the birds or additional income beyond Jones's salary for working on Waldrop's property.

Jones played an important, albeit assisting role, with Waldrop to violate the ESA. Over approximately four years, Jones aided Waldrop to receive illegally imported wildlife and process the payments so they would not be easily connected back to Waldrop. Even after authorities seized a package that Jones agreed to abandon, he continued to abet Waldrop knowing it was wrong.

A period of probation will generally deter others who seek to violate U.S. laws for their personal or financial gain, even if they had a smaller role than other conspirators. This case is one of the rare situations where the government does not believe specific deterrence is necessary. Jones would not have violated the ESA but for Waldrop. Jones did not benefit from having the collection and is unlikely to commit similar violations in the future. The government also does not seek a fine in this case, as Jones did not make any profits to disgorge.

Finally, the Court should strive to avoid unwarranted sentencing disparities. As the government will detail in its sentencing memorandum relating to Waldrop, the government does not oppose Waldrop's request for a downward departure to a non-incarceratory sentence primarily based upon his ill health. The government respectfully urges the Court to not impose a jail sentence for Jones, as it would be unjust given our recommendation for Waldrop and Jones's less culpable role.

III. Conclusion

For the foregoing reasons, the Court should sentence the defendant to 12 months' probation and a $10 special assessment.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:     /s/
Anna L. Karamigios
Assistant U.S. Attorney
Eastern District of New York
(718) 254-7000

    /s/
Ryan C. Connors
Senior Trial Attorney
Environmental Crimes Section
(202) 305-0363

cc:   Clerk of Court (RPK)
      Counsel for defendant (via ECF)